## Ball, et al. v. Commonwealth.

(Decided June 21, 1912.)

### Appeal from Harlan Circuit Court.

1. **Bonds—Bond for Good Behavior—What Not a Breach of Bond.—** Where a person under arrest is required, under section 382 of the Criminal Code of Practice, to give a bond to keep the peace or for his good behavior, a conviction of the principal in the bond of an offense not amounting to a felony, and not involving a breach of the peace, is not a breach of the bond.

2. **Bonds—Bond for Good Behavior—When Cannot Be Forfeited.—** A bond to keep the peace can be forfeited only where there has been a conviction of the principal of an offense which is either a felony, or a breach of the peace which imports violence or injury to an individual or his property; a mere breach of the public peace and order is not a breach of the covenants of the bond.

3. **Bond—What Does Not Constitute Breach of Peace Bond.—** Where a person under arrest charged with confederating with others for the purpose of intimidating and alarming others, and for cruelly and inhumanly beating and bruising a third person,

was required to give a bond to keep the peace and be of good behavior for a year, his subsequent conviction under a warrant issued by the judge of the county court charging him with having "committed the offense of a breach of the peace by being disorderly, by insulting Marion Etling and wife Lidia Etling, discharging deadly weapons and shooting a dog," for which he was fined $25.00, did not constitute a breach of his peace bond under section 391 of the Criminal Code of Practice, which provides that a peace bond will be broken by a judicial conviction of the defendant of an offense involving a breach of the peace. within the period specified in the bond.

W. F. HALL and H. C. FAULKNER & SON for appellants.

JAMES GARNETT, Attorney General, J. G. FORESTER and CLAY & CARTER for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Appellant Smith Ball being in custody under a charge of having confederated with other persons for the purpose of intimidating and alarming others, and for having cruelly and inhumanly beaten and bruised one J. T. Farley, was, upon the motion of the Commonwealth's Attorney, required to give a bond in the sum of $5,000.00 to keep the peace and be of good behavior for a period of twelve months. He executed this bond on February 11, 1911, with his co-appellants, W. M. Smith and Allen Ball, as his sureties. By the terms of his bond, Ball undertook to keep the peace and be of good behavior towards all citizens in this Commonwealth for a period of twelve months, "and that he would not be guilty of a felony, or any offense involving a breach of the peace during said time."

On July 11, 1911, Ball was tried upon a warrant issued against him by the judge of the Harlan County Court, which contained the following charge: "Smith Ball has committed the offense of a breach of the peace, by being disorderly, insulting Marion Etling and wife Lidia Etling, discharging deadly weapons and shooting a dog." Ball was tried by a jury and fined $25.00, which he paid. On July 25, 1911, the Commonwealth instituted this action upon Ball's peace bond, seeking to recover from him and his sureties the penalty of $5,000.00 therein stipulated, upon the ground that it had been broken by Ball's conviction above set forth. A demurrer to the petition was overruled. In the first paragraph of their answer appellants traversed the alleged breach of

the bond, and in a second paragraph they alleged affirmatively, that while Ball was walking along one of the streets of the town of Harlan in a quiet, civil and orderly manner, he was attacked in a violent way by a vicious dog belonging to Marion Etling; that neither Marion Etling nor Lidia Etling his wife, nor any other person, was present or took any part or interest whatever in what then occurred; and that when the dog was about to bite Ball, he, in order to protect his person from injury, shot the dog, but did not kill it. Appellants further alleged that the shooting of the dog was the only charge upon which proof was offered or heard upon the trial; that Ball was found guilty only of having shot a dog, which did not constitute a breach of the peace nor any violation of the terms of the bond, and that Ball had not provoked the dog, in any way, to make the attack upon him. By an amended answer appellants alleged there was no evidence introduced showing that Ball was guilty of or had committed any additional offense, or any of the offenses charged in the warrant upon which he was tried, except that of "discharging deadly weapons" and "shooting a dog," neither of which was done in the presence of any other person, or in such a way or manner as to commit a breach of the peace. The circuit judge sustained a demurrer to the answer as amended, and the appellants having failed to further amend their answer, the trial court gave judgment for the Commonwealth against Ball and his sureties for the sum of $5,000.00; and from that judgment they prosecute this appeal.

The sufficiency of the petition is the first question to be determined; and if it be found to be insufficient, it will be unnecessary to consider the matters of defense set forth in the answer. A sufficient petition must show upon its face, a state of facts which, in law, constitute a breach of the terms of the peace bond, by which appellants covenanted that Ball "would not be guilty of a felony, or any offense involving a breach of the peace" during the year.

Section 382 of the Criminal Code of Practice provides as follows:

"A person may be arrested for the purpose of requiring of him security to keep the peace, or for his good behavior, in the following cases:

"1. Upon the complaint on oath, of a person threatened, to a magistrate, that the defendant has threatened to commit an offense against his person or

property, and upon the magistrate being satisfied, by examination on oath of the complainant or others; that there are reasonable grounds to fear the commission of the offense threatened.''

. ''2. Upon information given on oath to a magistrate, by any person, that the defendant is about to commit violence endangering human life, or is about to commit an offense amounting to a felony, and the magistrate being satisfied, by an examination on oath of the informant or others, that there are reasonable grounds for apprehending the commission of such violence or felony.''

''3. If a magistrate or court be satisfied, by the conduct or words of a person in the presence of such magistrate or court, or from proof given before such magistrate or court, that there are reasonable grounds for apprehending that such person will commit an offense against the person or property of another.''

And, Section 391 of the Criminal Code of Practice specifies breaches of the bond as follows:

''The following are breaches of the bond required in this chapter: ·

''1. The failure of the defendant to appear in the circuit court, if the bond require such appearance, or departing therefrom before he is lawfully discharged.

''2. A judicial conviction of the defendant of an offense involving a breach of the peace, within the period specified in the bond.

''3. A judicial conviction of the defendant of a felony within the time specified in the bond, if the bond be for his good behavior.''

It will be noticed that while section 382, which specifies the grounds upon which a bond may be required, seems to rest that requirement upon violence, the endangering of human life, or some offense against the person or property of another, subsection 2 of section 391, *supra,* makes a judicial conviction of the defendant of an offense involving the mere breach of the peace an infraction of the bond. It is insisted, therefore, by appellee that a conviction of any offense which amounts to a mere breach of the peace, in its broadest sense, is sufficient to sustain a forfeiture of the bond. This broad interpretation of the statute has not, however, been adopted by this court. In Rankin v. Commonwealth, 9 Bush, 553, Rankin was tried and fined on the double accusation of ''drunkenness'' and ''disorderly conduct,'' and upon the strength of that conviction his former recognizance to

keep the peace was forfeited by the trial court. Rankin insisted, however, that a conviction for drunkenness and disorderly conduct did not amount to a breach of the obligation of his bond, and the trial court having ruled against him, he appealed. In construing section 387 of the old Code, which is identical in terms with subsection 2 of section 391 of the present Criminal Code of Practice above quoted, we said:

"We are of the opinion that if the order of forfeiture can be sustained at all in this case, it is by virtue of the second subdivision of section 387 of the criminal Code of Practice, which declares substantially that 'a judicial conviction of the defendant of an offense involving a breach of the peace within the period specified in the bond' shall be a breach of the bond. And the city court was not authorized, as a consequence of its last judgment convicting Rankin, to order a forfeiture of his recognizance previously taken, unless that conviction imported with reasonable certainty a breach of the condition to 'keep the peace and be of good behavior toward all good citizens.' It does not appear whether the conviction in the second proceeding against Rankin was for drunkenness merely or for some form of disorderly conduct, or for both offenses, which under particular and distinct ordinances are separately punishable in the city of Louisville; but certainly either or both offenses might have been committed without violence or injury to any individual, without which the undertaking of the appellant could not have been broken, as we construe the recognizance."

The same rule was applied in Commonwealth v. Mahoney, 2 Ky. L. R., 314. And, in Cornett v. Commonwealth, 25 Ky. L. R., 1769, 78 S. W., 858, where it was attempted to forfeit Cornett's peace bond upon the ground that he had been convicted of selling spirituous, vinous and malt liquors in a local option territory, this court said:

"By section 382 of the Criminal Code if the defendant had threatened to commit an offense against the person or property of another, and there are reasonable grounds to fear the commission of the offense threatened, or if he is about to commit violence endangering human life, or is about to commit an offense amounting to a felony, and there are reasonable grounds for apprehending such violence or felony, the defendant may be required to give surety to keep the peace or for his good

behavior. By section 391 a judicial conviction of the defendant for an offense involving a breach of the peace, or for a felony within the time specified in the bond, is a breach of the bond. Under these provisions it has been held that a conviction of the defendant of an offense not amounting to a felony, and not involving a breach of the peace, is not a breach of the bond. (Rankin v. Commonwealth, 72 Ky., 553; Commonwealth v. Mahoney, 2 Ky. L. R., 314.) The conviction, therefore, for selling spirituous, vinous and malt liquors in violation of the local prohibitory law was not a breach of the bond.''

That a breach of the peace implies the use of physical force against another was also expressly held in Embry v. Commonwealth, 79 Ky., 440. In that case Embry was indicted, as Ball was first indicted, for having unlawfully confederated with others for the purpose of intimidating another, the offense specified in Embry's case being a threat to prosecute Pearson for selling whiskey without a license.

In holding that there was no offense charged, the court said:

''The mischief the legislature intended, by the statute, to provide a remedy against was the confederating and banding together of disorderly and evil-disposed persons for the purpose of unlawfully, and by the use of physical force, or threats of force and violence, overawing and injuring the persons and property of obnoxious and defenseless individuals, to the disturbance of public tranquility and order.

''Intimidating, alarming and disturbing, in the sense the words are obviously used by the legislature, as well as according to their legal signification, imply the use of physical force or menace, and involve a breach of the peace.''

See, also, Johnson v. Clem, 82 Ky., 86.

This court is, therefore, committed to the doctrine that before a peace bond can be forfeited there must have been a conviction of an offense which is either a felony, or a breach of the peace which imports violence or injury to an individual or his property; a mere breach of the public peace and order is not sufficient.

This construction conforms to the earlier view upon the subject rather than the later view, which would make any act of public indecorum or disorder a breach of the peace.

In treating of the Anglo Saxon law, in Pollock & Maitland's History of English Law, it is said:

"All criminal offenses have long been said to be committed against the king's peace; and this phrase, along with the 'king's highway' has passed into common use as a kind of ornament of speech, without any clear sense of its historical meaning. The two phrases are indeed, intimately connected; they come from the time when the king's protection was not universal but particular, when the king's peace was not for all men or all places, and the king's highway was in a special manner protected by it. Breach of the king's peace was an act of personal disobedience, and a much graver matter than the ordinary breach of public order; it made the wrong doer the king's enemy." (I, 44).

And, in speaking of the same subject under the law after it had become settled and known as the common law, the same work says:

"We may think that every crime can be esteemed a breach of the king's peace; but breach of the king's grid or mund had no such extensive meaning. It only covered deeds of violence done to persons, or at places, or in other seasons that were specially protected by royal power." (II, 453).

"The words about the king's peace have had a definite meaning; they point to a breach of the king's grid or mund, a crime which at all events deserves the heavy wite of a hundred shillings, and which, when coupled with homicide, has been unemendable." (II, 463).

We conclude, therefore, that under section 391 of the Criminal Code, *supra,* a conviction of a felony or of an offense involving a breach of the peace, is a prerequisite to the forfeiting of a peace bond; and, under section 382, the breach of the peace contemplated by section 391 must be an offense against the person or property of another. Following this construction, it was held in Rankin v. Commonwealth, *supra,* that drunkenness was not a breach of the bond; and in Cornett v. Commonwealth, *supra,* that illegally selling liquor was not a breach of the bond, since neither act amounted to a felony, or an offense against the person or property of another.

From this it follows that if appellant was tried and convicted merely for some public disorder, like the shooting of a dog, he is not within the rule which requires that he should have committed some act of violence or injury to an individual or his property before he can be said to

have committed a breach of the peace which would for-
feit his peace bond.

The petition alleges that Ball was convicted of the
offense of a breach of the peace by, (1) being disorderly,
(2) insulting to Marion Etling and his wife, (3) discharg-
ing deadly weapons, and (4) shooting a dog. Conceding
that Ball was tried and convicted upon each of these four
specifications, it is, nevertheless, apparent that he has
not been convicted of such a breach of the peace, that
could, under the definition above given, sustain a for-
feiture of his peace bond, since no one of the offenses in-
cludes a charge of violence or injury to persons or prop-
erty. Either of them might have been committed without
violence or injury to the person or property of any one.
The nearest approach to a sufficient charge is the second,
which alleges that Ball was insulting to Etling and his
wife; but that language is too general in its terms to
carry the idea of violence or injury to either of them,
upon Ball's part. And, if it be urged that the fourth
charge is sufficient because a dog is property under our
law, it is a sufficient answer to say that it is not charged
that the dog belonged to any one.

From this review of the authorities we conclude that
the circuit judge erred in overruling the demurrer to the
petition.

Judgment reversed with instructions to sustain the
demurrer to the petition.