I therefore respectfully dissent from the majority opinion herein.

---

(113 So. 860)

No. 28525.

**STATE v. READ et al.**

**In re READ et al.**

July 11, 1927.

*(Syllabus by Editorial Staff.)*

1. **Breach of the peace ⊸22—Defendant's alleged utterance of profanity on highway unaccompanied by threats or violence held not violation of peace bond given by him on charge of threatening to kill or do bodily harm (Act No. 31 of 1886; Const. art. 7, § 48; Rev. St. § 1016).**

Defendant's alleged use of profane language in front of his filling station on public highway, for which he was convicted, under Act No. 31 of 1886, *held* not violation of peace bond given, under Const. art. 7, § 48, Rev. St. § 1016, on charge of threat to kill or do great bodily harm, where person threatened was not present at time of alleged utterance of profanity, and where defendant at such time made no threats and committed no act of violence.

2. **Bonds ⊸50—Conditions or obligations of bond given under compulsion of statute cannot be made more onerous than statute requires.**

Conditions or obligations of bond given under compulsion of statute cannot be made more onerous than statute requires, and any stipulation beyond requirements of statute is void.

3. **Penalties ⊸3—Imposition and extent of penalty imposed for particular offense are limited by authority expressly conferred by statute.**

Courts have no authority to impose penalty for any wrongdoing, unless authority is expressly conferred by statute, and extent of penalty to be imposed for particular offense is limited by statutory provisions.

4. **Breach of the peace ⊸16—Requirement of security to keep peace accompanied by imprisonment until security is given is penalty.**

Requirement of defendant that he furnish security that he will keep the peace and imprisonment of defendant until he gives such security constitute imposition of penalty analogous to imposition of fine.

5. **Breach of the peace ⊸22—Misdemeanor not amounting to breach of peace nor inciting violence and unrelated to person or offense originally threatened does not violate peace bond (Rev. St. § 1016).**

Person under peace bond, under Rev. St. § 1016, does not violate bond by committing misdemeanor, where misdemeanor does not amount to breach of peace inciting violence to person or property and does not relate to person originally threatened, or to offense threatened or apprehended for which offender was required to give bond.

Overton, J.; dissenting.

Suit by the State of Louisiana against H. B. Read and others to forfeit the peace bond of defendant H. B. Read. Judgment for plaintiff was affirmed by the Court of Appeal, and the defendants apply for certiorari. Judgments of the district court and the Court of Appeal annulled, and suit dismissed.

M. R. Stewart, of Lake Charles, for applicants.

Percy Saint, Atty. Gen., and John J. Robira, Dist. Atty., and S. H. Jones, Asst. Dist.

Atty., both of Lake Charles (E. R. Schowalter, Asst. Atty. Gen., of counsel), for the State.

O'NIELL, C. J. On the 26th of March, 1925, H. P. Nichols appeared before a justice of the peace, and, under oath, charged that, on or about the 26th of January, 1925, H. B. Read threatened to kill him or do him great bodily harm and displayed a knife and showed an intention to carry out his threat. Nichols, averring that he was not influenced by motives of malice or ill will, but acting only because he had reason to fear and did fear that Read would commit the offense which he had threatened, "prayed surety of the peace against the said H. B. Read," and prayed that a warrant should issue for his arrest and that he should be dealt with according to law.

A warrant was issued for Read's arrest, and, on the 28th of March, 1925, he was brought before the justice of the peace and ordered to furnish a peace bond for $1,000 for the term of one year. Two responsible citizens signed the bond as sureties, and Read was released.

On the 23d of November, 1925, the district attorney filed a bill of information charging that Read did, on the 18th of that month, on the public highway in the town of Edgerly, "unlawfully use loud, vociferous, obscene, vulgar and indecent language, and did curse and swear in a manner calculated to disturb and alarm the inhabitants." Read was arrested, brought before the district court and arraigned, pleaded not guilty, was tried and convicted and sentenced to pay a fine of $50 and costs and be imprisoned for 30 days, and in default of payment of the fine to be imprisoned 30 days longer. The conviction was had on the 29th of January and the sentence was imposed on the 23d of February, 1926.

On the 12th of February, that is, two weeks after Read was convicted, the district attorney filed this civil suit against him and the sureties on his peace bond to have the bond declared forfeited, and the judge who had convicted Read ordered him and the sureties on his bond to show cause on the 23d of February—the day on which he was afterwards sentenced—why the bond should not be declared forfeited. The defendants, without objecting to the summary character of the proceedings, filed a demurrer or exception of no cause of action, and an answer, pleading that Read's conduct on the occasion referred to in the bill of information, for which he was convicted, was not a violation of his obligation under the peace bond, which was given only because of H. P. Nichol's complaint under oath that he had reason to fear and did fear that Read would carry out an alleged threat to do personal violence to H. P. Nichols, and the defendants, therefore, pleaded that any other or further condition in the bond was not authorized by law and was therefore null and without effect.

The exception of no cause of action was overruled, and the case was tried and submitted on the record of Read's conviction for using profane language on the public highway, and on the testimony of the justice of the peace, of H. P. Nichols and of four other witnesses, only three of whom were present when the cursing was done, for which Read was convicted. The justice of the peace testified merely that the proof, on which he required Read to give the peace bond was the affidavit of Nichols and his own personal knowledge of the "affair." The justice of the peace testified also, over the objection of the defendant's attorney, that he had had 10 or 12 previous complaints against Read, for which warrants had been issued. H. P. Nichols testified that he was a deputy sheriff residing in Edgerly, where Read also resided, and Nichols undertook to relate something which he said occurred on the 9th of February, 1926, but, on the objection of the defendant's attorney, the testimony was excluded. The third witness testified that

he had heard Read disturbing the peace in Edgerly two or three times, but he did not relate what occurred on either or any of those occasions, and he did not pretend to have been present on the occasion when Read used the profane language for which he was convicted of disturbing the peace. Of the three witnesses who testified that they were present on that occasion, one said merely: "Well, I heard him one evening talking a little loud, but I couldn't say he was disturbing the peace—like any one will." Another of the three eyewitnesses—or ear and eye witnesses—testified that on the occasion for which Read was convicted of a disturbance of the peace, at a filling station, of which Read was proprietor, in the town of Edgerly, he "acted like he was drunk," and cursed H. P. Nichols' boy. The witness said that that was the only disturbance that he knew anything about. The third eyewitness, being asked whether he had ever heard Read disturb the peace, after the 28th of March, 1925—the date of the peace bond—replied: "Well, once I heard a little loud talking." Asked if that was the disturbance for which Read was convicted, the witness replied that it was. That is all that the witness testified to.

The district court gave judgment condemning Read and his sureties, in solido, to pay to the Governor of Louisiana $1,000, with legal interest from the date of the judgment, and the costs of court. On appeal to the Court of Appeal the judgment was affirmed. On the relation of the defendants the case was ordered up for review.

[1] The question is whether Read's indulging in profane language in front of his filling station in the town of Edgerly, on the 18th of November, 1925, for which he was convicted on the 29th of January, 1926, was a breach of the peace bond which he had given on the 28th of March, 1925, on the affidavit of H. P. Nichols that he had reason to fear and did fear that Read would do him bodily harm. Nichols was not present when the profanity was uttered, on the 18th of November, 1925. It is not contended, and is not true, as far as the record shows, that Read's language had any reference whatever to H. P. Nichols, or that Read committed any act of violence, or made any threat or hostile demonstration towards any one. The evidence went no further than to show that Read seemed—to one of the witnesses at least—to be under the influence of liquor and was using profane language while at his place of business on the public highway. We have no reason to doubt that the proof was sufficient to justify the judge in convicting Read of the offense of using profane language on the public highway. The statute (Act 31 of 1886, p. 40) declares:

"That any person who shall go into any public place, into or near any private house, or along any public street or highway near to any private house, and who shall use loud and vociferous or obscene, vulgar or indecent language, or swear or curse, * * * in a manner calculated to disturb or alarm the inhabitants thereof shall, on conviction thereof before any court of competent jurisdiction, be condemned to pay a fine not exceeding fifty dollars, and in default of the same be sentenced to imprisonment for not less than ten days nor more than thirty, or suffer both at the discretion of the court."

Read's conduct on the 18th of January, 1926, for which he was prosecuted and convicted, may have been ever so reprehensible and deserving of the punishment inflicted, but it was not, in any sense, a carrying out or an attempt to carry out the threat which had given H. P. Nichols the right to have Read placed under a peace bond.

The only law authorizing any court to require a person to give security to keep the peace, in Louisiana, is contained in the third paragraph of section 48 of article 7 of the Constitution and in section 1016 of the Revised Statutes. The paragraph in the Constitution, defining and limiting the juris-

·diction of justices of the peace in criminal cases, authorizes them to require bonds to keep the peace, viz.:

"They shall have criminal jurisdiction, as committing magistrates only, and shall have power to bail or discharge, in cases not capital or necessarily punishable at hard labor, and may require bonds to keep the peace."

Section 1016 of the Revised Statutes provides that justices of the peace shall have authority whenever a complaint is made under oath that a breach of the peace has been committed, or that there is just cause to apprehend that a breach of the peace is intended, to cause the person charged with such breach of the peace or intention of breaking the peace to be brought before the justice of the peace and to direct the offender to give such security as the justice of the peace may deem reasonable to keep the peace of the state, and to answer to the offense if any has been committed; and in case of a refusal to give such security, the justice of the peace may "commit the party so charged" to the custody of the sheriff, to be by him imprisoned until the security is given.

There have been only three cases in our jurisprudence, as far as we know, in which the subject of compelling a person to give a peace bond was discussed. In State ex rel. Gestner v. Murphy, Recorder, 40 La. Ann. 855, 6 So. 107, the court ruled, or at least took it for granted, that the obligation or condition of a peace bond, under section 1016 of the Revised Statutes, was that the person condemned to give the bond, or in default thereof to be imprisoned, should not commit the offense which he had threatened to commit and which threat had warranted his being placed under bond. The court said:

"A threat to burn a dwelling house is a threatened breach of the peace, as it puts the party threatened in fear, and excites him to personal prowess to protect his person and property.

"A magistrate has the power under section 1016, R. S., to order the party making the

164 LA.—11

threats to furnish security *that he will not carry out the threat*, and in default of furnishing security he has the power under said section to commit until the security ordered is furnished." (The italics are ours.)

In State ex rel. Whitesides v. Judge, 48 La. Ann. 95, 18 So. 904, the relator was charged, with others (see State ex rel. Mahler et al. v. Judge, 48 La. Ann. 92, 18 So. 902), with the crime of assault and battery, and was refused bail because a physician certified that the victim of the assault might die. The judge, answering a rule to show cause why the defendant should not be released on a writ of habeas corpus, showed that the defendant was, at the time of the assault, under indictment for a capital offense—arson of a dwelling house in the nighttime—and had been released on bail, one of the conditions of the bond being that he should keep the peace of the state; and the judge contended that that condition or obligation of the bond was breached by the defendant's committing assault and battery, and that he (the judge) might therefore rescind his order for bail. This court declared that it would not decide or consider the question whether the defendant's committing assault and battery after signing the peace bond was a breach of the bond. The court ruled that, as assault and battery was a bailable offense, the defendant had the absolute right to be released on bail, as far as that accusation detained him. The decision is of little or no importance here.

In State ex rel. Babin, Justice of the Peace, v. Foster, Judge, 109 La. 587, 33 So. 611, it was held that the Constitution of 1898 had abolished the right of justices of the peace to require a person placed under a peace bond to pay the costs of the proceedings. It was also held that the district court, in a habeas proceeding, should not have ordered the release of the party imprisoned for failure to pay the costs in addition to giving the peace bond, but should have ordered the relator's release only

on condition that he should furnish the peace bond. The decision is not important here except to show that the order of a justice of the peace requiring a person to give a peace bond, or to be imprisoned until such bond is given, is in the nature of an infliction of a penalty, which must not go beyond the statute.

[2] The conditions specified in the 'peace bond which Read was required to furnish were that he "should keep the peace for and during the term and space of one (1) year from and after date thereof, and be of good behavior towards the state of Louisiana and all citizens thereof, and especially towards H. P. Nichols during the same time." The stereotyped reference to the peace of the state of Louisiana and all of the citizens thereof might well have meant merely that the offense which the peace bond was intended to hinder or prevent was a crime against the peace and dignity of the state and of all her citizens; the language of the peace bond, in that respect, having almost the formality of an indictment. Such language has become so hackneyed in legal phraseology where it is not required by statute that it has almost lost its historical meaning and become a mere ornament of speech. Pollock & Maitland's History of English Law, vol. 1, p. 44, and volume 2, pp. 453 and 463; 40 L. R. A. (N. S.) 192. It is well settled that the conditions or obligations of a bond given under compulsion of a statute cannot be made more onerous than the statute requires. Any such stipulation beyond the requirements of the statute is null; and it has been so decided directly in reference to a peace bond. In Cornett v. Commonwealth, 78 S. W. 858, 25 Ky. Law Rep. 1769, under a statute authorizing magistrates to require peace bonds conditioned that the party furnishing the bond should be of good behavior and should not commit any felony or any offense involving a breach of the peace during the term of the bond, it was held that there was no authority for the stipulation in the bond "not to engage in the unlawful sale of spirituous, vinous or malt liquors," and a conviction of such sale of intoxicating liquors was held to be not a breach or violation of the bond. The reason for the ruling was that the "good behavior" mentioned in the common-law form of peace bonds did not mean that the person under bond should be always on his good behavior, in the broad sense of the term, but meant that he should not commit a felony or a breach of the peace importing violence to an individual or his property.

[3, 4] What is commonly understood nowadays by the term "peace bond" is not the same undertaking—and is not so easily breached—as the common-law "surety for good behavior," which the English courts had the inherent and discretionary power to require of any person convicted of a felony or gross misdemeanor, besides imposing the prescribed penalty of the law. 4 Blackstone, 252; 9 C. J. 393; 8 R. C. L. 282; Ball v. Commonwealth, 149 Ky. 260, 147 S. W. 953, 40 L. R. A. (N. S.) 186. When that power is exercised after a conviction for some indictable offense, it is a part of the judgment of the court, and is founded upon the authority incident to the common-law courts of record; which power, however, is not a part of Louisiana's system of criminal law. In this state the courts have no authority to impose a penalty for any wrongdoing, however reprehensible, unless the authority is expressly conferred by statute. It is now universally recognized that to require a person to furnish security that he will keep the peace, and at the same time to condemn him to be imprisoned until he gives the security, is imposing a penalty. It is the same kind of penalty that is imposed when a person is condemned to pay a fine or in default thereof to be imprisoned.

The statute (34 Edward III), authorizing justices of the peace to require surety for good behavior of all those that are not of good fame, to the intent that the public may

not be troubled by such persons, is not a part of our system. In the states where such authority is conferred by statute, the jurisdiction to require security for the good behavior of the accused does not exist when the conviction is for a statutory misdemeanor, or even for a common-law misdemeanor if the penalty therefor is prescribed by statute. The reason is that the requirement of a peace bond is in the nature of a penalty, and the courts cannot impose a greater penalty than the statute prescribes for any particular offense. State v. Gilliland, 51 W. Va. 278, 41 S. E. 131, 57 L. R. A. 426, 90 Am. St. Rep. 793.

In the common-law states in which, by statute, the magistrates have jurisdiction to require a person to give security to keep the peace and be of good behavior, it is generally, if not uniformly, held that such a bond can be forfeited not by any kind of breach of the peace, but only by the commission of a felony or of such breach of the peace as constitutes or involves violence to an individual or his property. Ball v. Commonwealth, 149 Ky. 260, 147 S. W. 953, 40 L. R. A. (N. S.) 186, and the decisions there cited.

[5] We adopt the rule—which is sufficient for a decision of this case—that a person under a peace bond, required under authority of section 1016 of the Revised Statutes, does not violate the bond by committing a misdemeanor that does not amount to a breach of the peace importing or tending to incite violence to a person or his property, and which has no relation to the person who was originally threatened, or to the offense which was threatened or apprehended and for the threat or apprehension of which the offender was required to give the peace bond.

The judgment of the district court and of the court of appeal is annulled and the demand of the state is rejected and the suit dismissed.

OVERTON, J. I think that section 1016 of the Revised Statutes authorizes a justice of the peace to require either a general or special peace bond. The bond in this instance was general. The offense, which resulted in the forfeiture of the bond, in my view, was a breach of the peace, and such a one as might incite to violence. I therefore dissent.