SALMEN BRICK & LUMBER CO., LTD., v. OWEN ET AL.

—

(February 25, 1929. Opinion and Decree.)
(March 18, 1929. Rehearing Refused.)

—

Eugene Thorpe, of New Orleans, attorney for plaintiff, appellee.

Denegre, Leovy and Chaffe, of New Orleans, attorneys for defendants, appellants.

WESTERFIELD, J. Plaintiff brings this suit against Cleveland Owens, a building contractor and his surety, The American Surety Company, for $1079.77, the alleged balance due for materials furnished the contractor and used in a building, which was erected by the contractor for account of Alex Schulman, the owner.

The defendant, Owens, failed to answer, judgment being had against him by default, from which no appeal has been taken. The defendant surety company denied liability on the ground that the plaintiff corporation failed to record its lien in the mortgage office of the Parish of Orleans, within thirty days of the acceptance of the work by the owner, a prerequisite, it is claimed, to recovery as against the surety, under the terms of the bond itself. The further defense was made by the surety to the effect that plaintiff unduly delayed the prosecution of its claim against the contractor without notice to the surety company.

The provision of the bond relied upon as defeating plaintiff's claim reads as follows:

"Provided however and upon the following express conditions. That the surety shall not be liable for the payment of any liens for labor performed or materials furnished unless such liens are recorded within thirty days after the owner shall have filed in the Mortgage Office of the Parish of Orleans, La., his acceptance of the work."

It is conceded that plaintiff's claim was not recorded in the mortgage office within the time mentioned in the bond; and it has been proven that the material for the price of which this suit is brought was delivered to Owens, the contractor and principal in the surety bond, and that it was used in the building which Owens was erecting for account of the owner.

Act 139 of 1922 is the last of a series of building contract laws, the purpose of

which as declared by the Supreme Court was and is to protect "workmen, laborers, engineers, and materialmen by liens, privileges and surety." This purpose, says the court, "shines forth in the title and body of the statute." Shreveport Mutual Building Association vs. Whittington, 141 La. 44, 74 So. 591.

One of the requirements of the Act of 1922, and of the other acts which precede it, is that the owner who contracts for the erection of a building "shall require of his undertaker, contractor, etc., * * * a bond with good and solvent surety * * * and the conditions of the bond shall be the true and faithful performance of the contract and the payment of all sub-contractors, journey-men, cartmen, truckmen, workmen, laborers, mechanics and furnishers of material jointly as their interest may arise."

It is further provided that the surety on the bond, when sued by the beneficiaries referred to, "shall be entitled to make only the same defenses that the contractor, for whom he signs the bond is authorized to make." The law further declares that an owner who violates this provision with respect to requiring contractors to give a bond shall be personally liable for the debts of the contractor, a penalty so severe, being nothing less than a legal imposition in derogation of common right, as to indicate the determined policy of the law, to require the exaction of a contractor's bond. See Merriweather Supply Co. vs. Baugh, 6 La. App. 733, and authorities therein cited.

The building law further provides that in addition to the contractor and his surety, the materialmen may hold the owner by recording his claim in the Mortgage Office, which shall operate as a lien against the property.

The language of the law in this respect is mandatory and it was thought at one time that the recording of the lien was a necessary condition to the recovery of a claim by a materialman, or other beneficiary, as against the contractor, and/or his surety. However, in the case of Shreveport Mutual Building Association vs. Whittington, 141 La. 44, where a surety company most vigorously defended itself on the ground, it was held that the failure of a materialman to record a statement of his account in the Mortgage Office within thirty days after the acceptance of the work by the owner was no bar to his recovery, as against the surety, because the surety could make only such defenses as the contractor, its principal, could make and this defense was not open to the contractor. We quote the following from the opinion:

"The mistake which the learned counsel for the surety company make is in not distinguishing between the owner, between whom and the materialman there is no contractual relation, on whose part there is no liability except that created by law against, or without, his consent, and the surety company who has voluntarily entered into a contract to pay the materialmen in case the contractor does not, and have received a consideration for thus engaging itself.

"In not one decision of this court has it ever been held that the surety was released by nonservice of an account upon the owner; and this court could not possibly so hold unless prepared to hold that the contractor also is released, for the statute in express terms provides that:

" 'The surety herein shall be limited to such defenses only as the principal on the bond can make.'

"This express provision cannot be ignored; and, surely, no one would say that the contractor was released from paying the materialmen by the failure of the latter to serve an account upon the owner."

Counsel recognizes the law to be as we

have stated with respect to sureties who have furnished bonds in compliance with the building law or who have intended to comply with its provisions as is evident by the following which appear in his brief:

"If there were anything about the bond, the contract or the specifications which in any way indicated that the bond was intended as a compliance with the building statute, we would be bound to concede the force of our opponent's position."

But it is insisted that in this case the defendant surety company did not intend to furnish a bond in compliance with the statute and no such bond was in fact given; that the bond as furnished was simply the result of an agreement between the contractor and the surety company, accepted by the owner. In other words, a conventional or contractual bond and not a statutory bond.

To begin with it is difficult to believe that an owner, who requires his contractor to furnish a bond would agree to a limitation of the obligation of the surety in such a way as to bring himself without the protection of the building law, and voluntarily subject himself to the severe penalty as provided in that law for failure to furnish a bond in compliance with the statute. This difficulty is greatly increased by the fact that there is in the record an admission that Alex Schulman, the owner, who was absent, would, if present, have testified "that he entered into the written contract involved in this case and caused same to be recorded in the mortgage office, required a contractor's bond and recorded the bond in the mortgage office and recorded a written acceptance in the mortgage office because he was advised that the building law required such things to be done in building contracts." It is true that this admission was made subject to the objection that it is an effort to

vary, alter, or explain a written contract. In regard to this objection it may be observed that the owner is not a party to the contractor's bond, any more than the plaintiff in this case, who was a furnisher of materials, is a party, both plaintiff, and the owner, being beneficiaries of a stipulation pour aueri, the bond being a contract between Owens, the contractor, and the surety company, defendant.

Moreover we know of no authority for the proposition that parol evidence may not be administered to explain ambiguous provisions in a written instrument.

To return to the proviso relied upon to the effect that the defendant, surety company, will not be liable for the payment of any liens, etc., it will be observed that the word "lien" is used and not the word "claim."

Referring to the building law we find that the materialmen and others shall record a sworn statement in the office of the Recorder of Mortgages for the Parish in which the work has been done, within thirty days after the registry of notice of the acceptance of the building by the owner.

The language of the present building law is the same in this respect as that which appears in other statutes which have preceded it, and the same as that interpreted in the Whittington case, which gave rise to so much contention.

Considering this language, without the light thrown upon it by the jurisprudence, as established by the Whittington case, and other cases which have followed, it would appear that the building law itself, in view of its mandatory provision requires the recording the lien as a condition precedent to recovery under the terms of the act, consequently, it might well be that

the officer of the surety company, defendant herein, assuming that he had the act before him, and granting for the moment, that he intended to comply with the building law, might well have written this proviso in the building contract, in the belief that the law itself made this condition.

This is the most probable explanation for the appearance of the proviso in the bond, and one most complimentary to the surety, which has offered no explanation and gives no reason for limiting its liability under the bond in a manner not authorized by the statute. No official of the surety company has testified nor is there any evidence that the premium exacted for the bond was less than is customarily charged for a bond, the obligation of which is co-extensive with the statutory requirements.

That this bond was intended to comply with the statute is made overwhelmingly evident upon further consideration. In the first place the language of the bond is almost verbatim the same as that used in the statute. The law requires that the contractor's bond shall guarantee "the true and faithful performance of the contract and payment of all sub-contractors * * *, jointly as their interest may arise." The bond guarantees that contractor shall "faithfully perform said contract * * *, and shall pay all sub-contractors, etc., named as beneficiaries in the bond, jointly and as their interest may appear." The law provides that the contract shall be reduced to writing, and signed by the parties, and that the owner shall require the contractor to furnish a bond; that the contractor's bond shall be recorded in the mortgage office, and that the owner shall record his acceptance of the work in the mortgage office. All of these requirements were complied with in this case.

It is true that there is in the contract no reference to the building law by number or by the year of its enactment, that is to say, it is not expressly stipulated that the bond is given in compliance with Act 139 of 1922, but that it was given in an effort to comply with that law is so plain as to require no explanation. Besides, contracts are presumed to have been entered into with relation to the law that governs them, Hill vs. Martin, 12 Mart. O. S. 1291. Statutory bonds must conform to the requirements of the statute, the obligation of the surety may not be enlarged or restricted.

Conditions required by the statute omitted in the bond, must be read into it, and conditions not required must be read out of it. Boswell vs. Lainhart, 2 La. 397; Corpus Juris, vol. 9, verbo "Bonds," Sec. 40; Panama Sash & Door Company vs. DeLisle et al. (No. 8592 Orl. App) unreported (see So. Rep. Dig); Carre vs. Stewart et al., 166 La. 317, 117 So. 238; U. S. F. & G. Co. vs. D'Angelo, 150 La. 190; Jeanerette Lumber & Supply Co. vs. Weir, 8 Orl. App. 87; Monroe Hardware Co. vs. Delatte, 4 La. App. 67; Interstate Grocery vs. Prutsman, 1 La. App. 73; State vs. Reed, 164 La. 315, 113 So. 860, 50 A. L. R. 383.

The law is not intended to benefit and should not be construed in the interest of the surety companies.

"The learned counsel of the surety company seem to think that this statute was enacted in the interest of the surety on the contractor's bond, whereas the statute expressly declares that the purpose has been simply to require that the bond be given. "Why the law should be solicitous for the protection of surety companies, the learned counsel, would, we imagine, be embarrassed to suggest any reason."

The secondary defense, to the effect that

the plaintiff unduly delayed the collection of his claim against the contractor is sufficiently answered by saying that this defense is not available to the contractor.

Act 225 of 1918 provides that sureties, who fail to make payment of their obligations within thirty days shall in the event that judgment is granted against them for the full amount claimed, pay an additional sum of 10 percent. The application of this statute to this case is not disputed, and the judgment appealed from awarded plaintiff the additional ten per cent provided for therein.

For the reasons assigned the judgment appealed from is affirmed.

———

JANVIER, J. (dissenting). I find myself unable to agree that this court should rewrite the bond in question so as to make it include an obligation more onerous than the surety was willing to voluntarily undertake.

At the time the bond was written by the surety it had knowledge of the fact that under the decisions of our Supreme Court a surety on a statutory building bond given under the Act of 1922 could not set up as a defense the failure of the materialman to file his lien within the prescribed thirty days. Presumably, it had had experience with materialmen who had neglected to file their claims and who, months and sometimes years, after the completion and acceptance of a job had proceeded against the surety who, during all this time had been under the impression that the matter was closed. Having had such experience this surety was unwilling to sign a statutory bond and desired to stipulate that its liability must be established within a fixed time. To this

end it inserted in the bond the provision that it would be liable to such materialmen and laborers and only such as should file their liens within thirty days after the acceptance of the work.

If the act prohibited the execution of any building contract except such as were protected by a statutory bond then I can easily see how any bond given in connection with such a contract should be construed as a statutory bond regardless of its provisions. As I read the Act of 1922, however, it does not prohibit such a contract, nor does it require any bond at all. Reading it as a whole it seems to intend to give to the owner a method of limiting his liability by obtaining a statutory bond and by requiring that if he wishes to limit his liability he shall record the contract and the bond in the mortgage office. That it did not intend to make it absolutely mandatory that a bond be obtained is evidenced by the fact that the act provides that if the owner does not obtain such a bond or does not record it and the contract he shall be liable to the same extent as the surety would have been.

If then he is not forced to obtain a bond at all, who but himself can complain if the bond he does obtain, does not contain all the provisions the materialmen would like it to contain? If it is not a statutory bond the owner is liable and the property is liable to such claimants as do not sleep on their rights but file their liens seasonably.

There have been a great many cases in which bonds were shown to have differed from those required under the particular statutes under which they were thought to have been given and in all of these cases the courts have held that although they were not statutory bonds they were good as conventional obligations. If then

there is such a thing as a conventional bond on a building contract, I fail to see why this is not one. To hold that this is a statutory bond is tantamount to holding that any bond given in connection with a building contract no matter what its terms is a statutory bond and that the surety thereon is liable not as he bound himself but as the statute would have bound him had he written a statutory bond.

Another thing that induces me to feel that we should not rewrite a bond of this kind is the fact that the very statute in question requires the bond to be recorded. Why, is this requirement contained in the act if all bonds given are to be construed as having been given in compliance with the act? The requirement that the bond be recorded is contained in the statute so that a person intending to sell material for a particular building may examine the records of the mortgage office and determine before he sells the goods whether the bond given is such a one as will protect him. If he is not satisfied with it he need not sell the goods.

The provision inserted in the bond in question, when recorded in the mortgage office, was notice to the world, including the claimant here that if recovery was to be had of the surety, the lien must be filed within thirty days of the acceptance of the work. Having furnished the material in the face of that stipulation in the bond, the claimant should be bound by it, and, having failed to bring himself within its terms should be held to have lost his rights against the surety.

For these reasons I respectfully dissent.